Avery, J.
The original bill was filed in the common pleas of Lorain county, on January 3, 1841, by *said Nathan Clark, against Samuel Strong, Daniel L. Baldwin, Barna Meccher, Quarters Gilmore, David P. Merwin, and Benjamin C. Merwin. The bill set forth, that said Samuel Strong, on August 9,1836, executed his note for $937.50, payable to complainant or bearer. Complainant indorsed the note to one Wendall, and Wendall indorsed it to Horace D. Clark. Clark sued complainant as indorser, and, at the April term, 1810, of said common pleas, obtained judgment for the amount of note and interest, with costs. Execution has been taken out'by Clark, on the judgment; a sale under it made of personal property; and a levy for the balance on complainant’s land. The bill states, also, that Strong has no property subject to execution, and that he is insolvent; but that he has an equitable interest in two lots of land, to wit: Lots 89 and 104, in the village plat of Black River township, in said county, by virtue of an article of agreement given by said Baldwin, Meccher, and Gilmore ; that Strong has paid the amount due on the contract; is *268 entitled to a deed, and can obtain it on request; that complainant has recently commenced a suit at law against said Strong, for the amount due on said note; that Strong, confederating with said Daniel P. Merwin, his brother-in-law, to defraud complainant, and deprive him and other creditors of their just rights, has recently procured a deed of such lots to be executed by said Baldwin, Meccher, and Gilmore, purporting to convey the same to said Merwin, for the benefit of said Strong’s wife, and that said deed is ready to be delivered at the instance of said Strong. The prayer of the bill, besides that for general relief, is, that the defendants answer the promises, and that they be enjoined from convoying away the lots or the title to them, either legal or equitable, till the matters set forth in the bill can be heard in equity; that Strong’s title be subjected to the payment of the claim on which suit is commenced as aforesaid against said Strong; and when judgmentshall bo obtained on the note, a sale of Strong’s interest in the lots be decreed, to satisfy said judgment. *The bill was sworn to, and an injunction as prayed for allowed.
Strong answered on April 16, 181-2. Honied that at that time, or at the commencement of the suit in chancery, he had any interest whatever in lots 89 and 104. He admits in the answer, that ho had owned the article for the lots; but that in October, 1840, he sold all his interest to Schuyler Strong, for $300; that he was indebted to said Schuyler for money had of him, and since that time he has had'no interest whatever in the lots; that Schuyler sold the lots to Mary Strong, his mother, for about $370, which she paid in cash for him. Ho denies that ho intimated, that he would convey the lots to his wife. He states that his wife was willing to convey her right of dower in a certain piece of land, if said two lots could be deeded to her, or to some one for her use, and said Strong was also willing, provided he could make any arrangement to purchase the article of said Schuyler; but no such arrangement was ever made. He denies all confederacy with said Merwin, and all fraud-.
On January 21, 1843, complainant filed a supplemental bill, stating, that at the October term, 1841, of the said common pleas,' he obtained a judgment on the claim aforesaid, against said Samuel Strong, for the sum of $1,050.22 and costs; that the judgment is still unsatisfied ; that Strong has not property, subject to execution, sufficient to satisfy the same: and therein complainant prayed that *269 said defendants, Strong, Baldwin, Gilmore, D. P. and B. E. Merwin, answer thereto; and that said two lots bé subjected to the payment of said judgment.
On September 19, 1843, said Daniel L. Baldwin answered, saying that the amount due for the lots was principally paid; but no deed had then been made for them.
On May 2, 1844, complainant filed an amended bill, making John W. Allen, Jane Harter, and Hiram Griswold, parties, because the interest of said Barna Meeeher had been conveyed and vested in them. Afterward, the *death of Barna Meeeher was suggested, and Daniel Baldwin and Anna Meeeher, his administrators, made parties. On November 25, 1844, complainant filed another amended bill, to make Schuyler Strong, a party defendant, who demurred to the bill.
At the May term, 1845, of the common pleas, the cause was hoard on the demurrer, when the demurrer was sustained, and the bill dismissed. Complainant appealed to the Supreme Court.
On August 5, 1846, Schuyler Strong filed his answer in said Supreme Court; in which he states, among other things, that he had paid to said Samuel Strong about $500 toward the purchase of what was called the Root farm, and for which the said Samuel could give him no title; and that for the purpose of saving said Schuyler from loss, said Samuel, on October 20, 1840, assigned him the article for lots 89 and 104, in part to indemnify him against loss on account of the $500 so paid, and that he, said Schuyler, did not at the time, nor when giving his answer, think the property assigned sufficient to satisfy the $500 and interest; that in July, 1841, he sold and assigned the article for said lots to his mother, Mary Strong, for $370; that at'the time of so assigning the article to his mother, he did not know that this suit in chancery was pending ; and that from that time to the time of his answer, he has had no interest whatever, either legal or equitable, in said lots 89 and 104, or in said article for the same.
At the August term, 1846, of the Supreme Court in Lorain county, this cause came on to be heard upon bills, answers, depositions, exhibits, etc., when the injunction was dissolved and the bill dismissed.
This bill of review was filed September 8,1846, and an amended bill of review on September 29, 1847.
In this amended bill, it is stated that before the date of tho *270 decree in the Supreme Court, to wit, about October 1, 1845, Schuyler Strong was paid, or payment was ^provided for him, from property assigned to him by said Samuel Strong, as stated in the bill of review, to the full amount of the debt from said Samuel to Schuyler, for which said lots 89 and 104 had been assigned to him, and Samuel Strong became entitled to the interest in said lots, or the proceeds thereof, in the hands of said Mary Strong. In this last amended bill, the complainant claims, that, by the filing of his original bill, he gained an equitable priority in said Samuel Strong’s equitable interest in said lots, over any one claiming interest in the same from, or under, the said Schuyler Strong, subsequently to the filing of said original bill. He states that he had no knowledge of this payment or provision for the payment aforesaid of said Schuyler Strong, at the time of the decree rendered by the Supreme Court in this case, and that not until a few days after the date of that decree, was said money actually paid to said Schuyler Strong. And he states his belief, that for the want of knowledge and proof of said last-mentioned facts in the original cause, he was prejudiced, and the said decree rendered against him, when it should have been rendered in his favor.
To the amended bill of review, Samuel Strong has answered; but his answer is objected to, because it is out of time; and it is claimed that the whole case will stand, as upon the demurrers both of Schuyler and Samuel Strong.
The first error assigned is, that the decree was rendered against the complainant, when it should have been in his favor.
The second is, that the decree is contrary to equity.
The other errors are, that the decree was not pronounced in open court; that the dismissal ought not to have been a general dismissal ; and that the decree does not show that the case was heard upon the replications filed by the complainant. These three last-named errors are not supposed to require any particular remark.
Under the two first, the questions presented in the case will be considered.
*The decree, it is contended, is erroneous and ought to be reversed, because it is contrary to the evidence. This, then, is purely a matter of fact; and it concerns the transfer by this Samuel Strong oi his equitable interest in the lots before mentioned, numbered 89 and 104; a fraudulent transfer, as it is alleged.
*271 To decide this point, answers, depositions, and exhibits, somewhat voluminous, have been examined, which need not be spread out here. Nor will it be useful to employ time, or occupy space in bringing all the facts to view, or in attempting to weigh the numerous circumstances that prove or disprove a fraudulent design. No principle of law would be decided in all that investigation. Before the court upon the circuit, the facts were the same as they are here now before us; they were not then doomed sufficient to establish fraud in this transfer. There are doubtless circumstances of sus]ñcion against the honesty of this transfer. But enough does not appear, after examining the whole of the evidence, to induce us to disturb that decree, independently of another view which we have taken, and which would be conclusive in the case.
The original bill, it will be remembered, was brought to subject equities in the hands of a debtor. Section 16 of the act directing the mode of proceeding in chancery, provides that where judgments at law, or decrees in chancery, have been obtained against any person, and the debtor has not personal or real estate subject to levy or execution sufficient to satisfy the judgment or decree, but has equitable interests in real estate, the same may be subjected in chancery to the payment of said judgment or decree. 'Under this section, the present complainant could have proceeded, if his claim had been in judgment when he filed his bill, and there had been no sufficient property of a description which could be sold on execution at law. Now, whatever may have been the rights of a creditor before the passage of this law, they are, since the passage, undoubtedly to be subject to its regulations. A case is given, indeed, in ^section 15, after suit commenced and before judgment; but it is unlike the present. If the complainant can find authority anywhere, it is in section 16. But to be entitled to the benefit of that law, he must have established his right by obtaining a judgment; and then the aid of chancery may be invoked where there is no legal estate to satisfy the judgment. We are all of the opinion that a demurrer could have been sustained to this original bill; and further, that as the transfer of this equity from Schuyler Strong to his mother, Mary Strong, took place bofore the date of the judgment against Samuel Strong, her equity would be prior to that of the complainant; that in this case, the equitable interest being in the hands of the said Mary Strong, a decree in complainant’s favor could not have sold or put this *272 equity to sale. There was not a lis pendens such as would make void the transfer and dispense with the necessity of making Mary Strong a party ; and in the opinion of a majority of the court, as there was no authority .for proceeding in chancery in the original bill, no amendment or an addition of parties could have remedied the defect; nothing short of an actual or implied waiver in the progress of the cause, by the party holding the equities, could confer such jurisdiction over the subject and person as to bind thorn by the decree. The principle just recognized as applicable to the case, strikes also at the foundation of the amended bill of review, and denies the right as claimed by the complainant.
L. F. Hamlin, and Hitchcock, Wilson & Wade, for complainants.
R. Wood and H. D. Clark, for defendants.
But aside from this consideration, the new matter alleged would not be sufficient to reverse the decree in either aspect as presented. It has no influence to prove fraud in the transfer, and it is too late for the complainant to seek for an appropriation of this money to the satisfaction of his judgment. As it has been paid in since the final dowee was rendered, there is no reason why the decree should bo reversed. The whole proceedings have been allowed to assume an aspect never originally contemplated, for the sake *of charging this money in the hands of a debtor of the judgment debtor. The bill of review is dismissed.